# United States Court of Appeals
## For the First Circuit

No. 16-2189

MOUNTAIN VALLEY PROPERTY, INC.,

Plaintiff, Appellee,

v.

APPLIED RISK SERVICES, INC.; APPLIED UNDERWRITERS, INC.;
APPLIED UNDERWRITERS CAPTIVE RISK ASSURANCE CO., INC.,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Torruella, Thompson, and Barron,
Circuit Judges.

Melissa A. Murphy-Petros, with whom Christopher P. Flanagan and Wilson Elser Moskowitz Edelman & Dicker LLP were on brief, for appellants.
David W. Bertoni, with whom Michael E. Carey and Brann & Isaacson were on brief, for appellee.

July 13, 2017

**TORRUELLA**, **Circuit Judge**. Defendants-Appellants Applied Risk Services, Inc. ("ARS"), Applied Underwriters, Inc. ("AU"), and Applied Underwriters Captive Risk Assurance Co., Inc. ("AUCRA") (collectively, "Applied"), challenge the district court's order denying their motion to vacate an arbitrator's decision. Because the arbitrator did not manifestly disregard the law and did not exceed his powers, we affirm.

## I.  Background

Plaintiff-Appellee, Mountain Valley Property, Inc. ("MVP"), purchased from AU a comprehensive insurance package known as SolutionOne® (the "Program") that integrated multiple lines of insurance, including workers' compensation insurance and employment practices liability insurance, while also offering certain payroll and tax services and profit sharing.

As part of the Program, on December 23, 2010, MVP entered into a three-year Reinsurance Participation Agreement ("RPA") with AUCRA. The RPA contained a mandatory arbitration clause, as well as a Nebraska choice-of-law clause.

On April 17, 2015, MVP filed a complaint in Franklin County Maine Superior Court, asserting breach of contract and various tort claims against Applied and seeking, inter alia, a return of the amount it was improperly charged from AU. In the complaint, MVP alleged that the Program, though marketed as a cost-

saving insurance alternative, was overpriced, with Applied imposing on MVP unlawful fees both in premiums and in amounts claimed to be due under the RPA. MVP also stated that AU, the entity from which it purchased the Program, was not even authorized to transact insurance in Maine. Applied removed the case to the U.S. District Court for the District of Maine based on diversity jurisdiction and filed a counterclaim, requesting that MVP pay $13,556 in outstanding premiums. In addition, Applied argued that claims by and against AUCRA, alone, had to be arbitrated in accordance with the RPA between MVP and AUCRA. MVP contended that the RPA's arbitration clause was unenforceable.

On February 25, 2016, over MVP's objection, the district court referred the claims against AUCRA to arbitration, for a determination of their arbitrability.

On April 12, 2016, the arbitrator decided that the case was not arbitrable and had to be adjudicated in court. The arbitrator, in a decision captioned "Final Award of Arbitrator," stated that whether this case should be arbitrated turned on the applicability of the McCarran-Ferguson Act, 15 U.S.C. §§ 1011-1015,[1] and not on the intent of the contracting parties. If the

---

[1] Section 1012(b) of the McCarran-Ferguson Act states: "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the

McCarran-Ferguson Act applies, the arbitrator reasoned, then the Nebraska Uniform Arbitration Act, Neb. Rev. Stat. §§ 25-2601 to 2622 (the "NUAA"),[2] reverse-preempts the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (the "FAA").  The arbitrator observed that the NUAA bans arbitration of insurance-related cases such as this one, regardless of the parties' intent to arbitrate.  Thus, the arbitrator continued, if the NUAA reverse-preempts the FAA, then the present case would not be arbitrable.

To determine the applicability of the McCarran-Ferguson Act, the arbitrator relied on American Bankers Insurance Co. of Florida v. Inman, which stated:

> Under the McCarran-Ferguson Act, a state law reverse preempts federal law only if: (1) the federal statute does not specifically relate to the business of insurance; (2) the state law was enacted for the purpose of regulating the business of insurance; and (3) the federal statute operates to invalidate, impair, or supersede the state law.

436 F.3d 490, 493 (5th Cir. 2006) (internal quotations and citations omitted).

---

business of insurance . . . unless such Act specifically relates to the business of insurance."

[2] Section 25-2602.01(f)(4) of the NUAA provides that a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid and enforceable, except when that written contract is "[an] agreement concerning or relating to an insurance policy other than a contract between insurance companies including a reinsurance contract."

-4-

The arbitrator found that: (1) the FAA does not specifically relate to the business of insurance; (2) section 25-2602.01(f)(4) of the NUAA, which regulates the relationship between an insurer and its insured by proscribing arbitration as a means of resolving any dispute that may arise between them, "was enacted for the purpose of regulating the business of insurance"; and (3) the FAA, if applied to enforce the arbitration clause, would "invalidate, impair, or supersede" the NUAA by requiring the parties to an insurance-related contract to arbitrate -- which is exactly what the NUAA forbids. Consequently, the arbitrator concluded that the McCarran-Ferguson Act applies and the FAA is reverse-preempted by the NUAA, which, in turn, precludes this case from being arbitrated as a matter of law.

The arbitrator also acknowledged Applied's argument that Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52 (1995), and a handful of other precedents mandate that this dispute be arbitrated. According to Applied, Mastrobuono held that the FAA will trump any conflicting state law provisions unless the contract specifically provides otherwise. Thus, Applied's argument continued, because the RPA merely contained a general Nebraska choice-of-law clause, but no express provision that any state law would trump the FAA, this dispute should be arbitrated.

-5-

The arbitrator then explained why <u>Mastrobuono</u> did not govern the issue before him. The arbitrator observed that in <u>Mastrobuono</u>, the McCarran-Ferguson Act was not before the Court, nor, indeed, was any other statute prohibiting arbitration. The arbitrator explained that <u>Mastrobuono</u> principally concerned the parties' intentions. The arbitrator then reasoned that the case before him was not about the intent of the parties, but rather about whether a particular dispute could be arbitrated as a matter of law. The arbitrator concluded that because the dispute before him could not be arbitrated as a matter of law due to the McCarran-Ferguson Act and the NUAA, the intent of the parties did not matter, and the dispute should be resolved in court.

Following the arbitrator's award, on June 17, 2016, AUCRA filed a motion to vacate the arbitration award under the FAA, and to transfer the entire case to the District of Nebraska pursuant to 28 U.S.C. § 1404(a). On August 22, 2016, Judge Hornby denied AUCRA's motion, and Applied filed a timely appeal from the denial of the motion to vacate.[3]

---

[3] The district court ruling denying the motion to transfer is not on appeal.

## II.  Discussion[4]

We review the district court's order de novo, keeping in mind that "[a] federal court's authority to defenestrate an arbitration award is extremely limited." First State Ins. Co. v. Nat'l Cas. Co., 781 F.3d 7, 11 (1st Cir. 2015).

### A.  Jurisdiction

In general, only final decisions or "interlocutory orders, decrees and judgments [that] . . . have a final and

_____

[4]  At oral argument, we raised, sua sponte, the issue of whether diversity jurisdiction exists in this case. See Florio v. Olson, 129 F.3d 678, 680 (1st Cir. 1997) ("[A] reviewing court has an obligation to inquire sua sponte into the subject matter jurisdiction of its cases."). We did so because Applied's brief in this appeal states "[t]he Complaint alleges compensatory damages of $18,590 for base fees, $67,481 for improperly charged composite rates, additional premiums, attorneys' fees and costs, damage multipliers, penalties, sanctions, punitive damages and interest." However, Under 28 U.S.C. § 1332(a)(1), district courts have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States." (Emphasis added). Because, according to Applied's brief, the amount alleged in the complaint was $86,071, which did not exceed $75,000 by a great amount and included attorneys' fees and costs and interest, it was not certain that the amount in controversy did, in fact, "[exceed] the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a)(1). Having reviewed the complaint ourselves in greater detail, however, we are now satisfied that the amount in controversy requirement is met. The complaint specifies that the amount of $18,590 was for base fees, and the amount of $67,481 was for improperly charged composite rates. In any event, the first amended complaint seeks the return of all fees and charges MVP paid to Applied, which MVP alleges by that point totaled $281,126.

irreparable effect on the rights of the parties" are appealable. Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 545 (1949). However, the FAA provides other grounds for appeal. Inter alia, § 16(a)(1)(E) allows an appeal from "an order . . . modifying, correcting, or vacating an award," and § 16(a)(3) provides that "an appeal may be taken . . . from a final decision with respect to an arbitration that is subject to this title." 9 U.S.C. §§ 16(a)(1)(E), (a)(3). Whether the order denying the motion to vacate the award of arbitration at issue here is appealable under either § 16(a)(1)(E) or § 16(a)(3) is a question of first impression in this circuit. MVP argues that we cannot hear this case because neither § 16(a)(1)(E) nor § 16(a)(3) grant us jurisdiction to hear an appeal from an order denying a motion to vacate.

In addition, as discussed at oral argument, although not raised by either party in the court below or in this Court, there is a question as to whether an appeal from a lower court order, such as the one presently appealed from, relating to only one of the parties in a multi-party action requires a Rule 54(b) motion to have been made in the lower court (Applied did not file a Rule 54(b) motion). Rule 54(b) provides, "when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court

expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). Because the district court made no such determination, it may be the case that the order denying the motion to vacate the arbitration award cannot be appealed because it is not a final judgment. On the other hand, the district court order may be a "final decision with respect to an arbitration" within the meaning of § 16(a)(3) of the FAA, and the FAA may here supersede Rule 54(b) because it is the more specific statute.

We need not decide, however, these jurisdictional questions; instead, we assume jurisdiction and dispose of the case on the merits. "The rule is well established in this Circuit that resolution of a complex jurisdictional issue may be avoided when the merits can easily be resolved in favor of the party challenging jurisdiction." Cozza v. Network Assocs., Inc., 362 F.3d 12, 15 (1st Cir. 2004) (citation omitted) (bypassing a "novel jurisdictional issue" regarding timeliness of appeal pursuant to the FAA because the case was susceptible to straightforward merits disposition). Although this rule does not apply to issues involving Article III subject matter jurisdiction after Steel Co. v. Citizens for a Better Environment, 523 U.S. 83 (1998), it remains in place for issues of statutory jurisdiction. See First State Ins. Co., 781 F.3d at 10-11 & n.2 (sidestepping a threshold issue of the timeliness of the appellant's petition to vacate the

-9-

arbitration award because "[the] case is easily resolved on the merits"); Davignon v. Clemmey, 322 F.3d 1, 10-11 (1st Cir. 2003) (holding that an appellate court remains free to bypass problematic jurisdictional issues provided those issues do not implicate Article III case or controversy requirement); Parella v. Ret. Bd. of R.I. Emps.' Ret. Sys., 173 F.3d 46, 54 (1st Cir. 1999). Because this case does not involve an Article III issue, we avoid its novel jurisdictional questions and proceed directly to the merits.

**B. Merits:  Review of the Arbitrator's Decision**

While § 10 of the FAA provides the grounds upon which an arbitration award may be vacated, we previously stated that the common law doctrine of manifest disregard of the law, which is not included in § 10, allows courts "a very limited power to review arbitration awards outside of section 10 [of the FAA]." Advest, Inc. v. McCarthy, 914 F.2d 6, 8 (1st Cir. 1990) (citation omitted). However, the Supreme Court, in Hall Street Associates, LLC v. Mattel, Inc., 552 U.S. 576 (2008), cast doubt on the continued existence of manifest disregard of the law as a ground for vacatur, and this court stated just this year that the doctrine remains "only as a judicial gloss." Ortiz-Espinosa v. BBVA Sec. of P.R., Inc., 852 F.3d 36, 46 (1st Cir. 2017). Even so, this court has yet to decide whether manifest disregard of the law remains as a ground for vacatur of arbitration awards, and no manifest disregard

-10-

of the law occurred in the present case.  We can therefore assume the validity of the doctrine and proceed to apply it.

> [A] successful challenge to an arbitration award, apart from section 10, depends upon the challenger's ability to show that the award is (1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact.

McCarthy v. Citigroup Glob. Mkts., Inc., 463 F.3d 87, 91 (1st Cir. 2006)(internal citations omitted).

No manifest disregard of the law occurred in this case. Applied argues that the arbitrator failed to apply Mastrobuono, which Applied believes should govern this dispute, and that, in doing so, the arbitrator disregarded the intentions of the parties. In fact, as discussed in greater detail above, the arbitrator carefully distinguished the dispute before him from Mastrobuono, principally on the grounds that Mastrobuono did not involve the issue of whether a dispute could be arbitrated as a matter of law -- whereas the dispute before him involved exactly that issue.  To resolve whether the dispute before him could be arbitrated as a matter of law, the arbitrator carefully applied the framework of American Bankers, and determined that, because the McCarran-Ferguson Act applied, the NUAA reverse-preempted the FAA.

-11-

Therefore, the arbitrator reasoned, the dispute was not arbitrable as a matter of law, and the parties' intentions did not govern.

We do not determine whether the arbitrator's decision was correct, because courts are not in the business of "hear[ing] claims of factual or legal error by an arbitrator or to consider the merits of an award." Poland Spring Corp. v. United Food & Commercial Workers Int'l Union, Local 1445, 314 F.3d 29, 33 (1st Cir. 2002). However, the arbitrator's reasoning and conclusions are at the very least colorable. Even if we were to assume, for the sake of argument, that the arbitrator's legal conclusions were incorrect, his award plainly was not "(1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling."[5] McCarthy, 463 F.3d at 91. Thus, no manifest disregard of the law occurred.

Applied also argues that the arbitrator exceeded his powers. See 9 U.S.C. § 10(a)(4). To start, it is difficult to see how the arbitrator could exceed his powers by deciding precisely the question the district court, at Applied's request, authorized him to decide -- whether the dispute was arbitrable.

_____

[5] Applied has not argued that the arbitrator's award was "mistakenly based on a crucial assumption that is concededly a non-fact." McCarthy, 463 F.3d at 91.

-12-

In any event, Applied here merely reprises the arguments it made in its attempt to show that the arbitrator manifestly disregarded the law. We have already rejected those arguments, because the arbitrator produced a well-reasoned award. The arbitrator therefore did not exceed his powers.

### III. Conclusion

Accordingly, we affirm the district court's denial of Applied's motion to vacate the arbitration award.

**Affirmed.**